Christian, J.
delivered the opinion of the court:
This cause is before us upon an appeal from a decree of the Circuit court of Giles county. The bills, original and amended, are filed by the appellee, John W. Easley, to enforce the specific execution of a contract which he alleges was entered into with the appellee’s testator, ¥m. W. McComas, in the year 1860. The original bill alleges that the appellee Easley purchased of McComas, some two years before the death of the latter, a certain house and lot in the town of Pearisburg, for the sum- of $1,200, to be paid in a note for that sum at ninety days, negotiable and payable at the Bank of ’the Old Dominion at Pearisburg. It is further alleged that this note was afterwards negotiated in said hank by McComas and paid at maturity by Easley, and that the proceeds of said note were paid over to McComas as full payment for the purchase of said house and lot. It is admitted by the appellee (Easley) that the, contract with McComas was by parol—his said bill alleging that he “took no title bond or other writing, or memorandum, setting forth the contract, for the reason that McComas promised to make to him a title in fee simple to said hpuse and lot.” lie further alleged in his original bill, that at the time of the contract, McComas and his family were residing in the house ; that he, McComas, had ex *25 pressed his intention to remove to one of the Southern States in a short time and that by the terms of their agreement he was to continue in the possession of the house and lot until it whs convenient for him to vacate it; that in the fall of 1860 he did vacate the premises and deliver full possession to the appellee, and that he has continued in actual possession ever since. The appellee further states in his said original bill,-that the said McComas entered the army shortly after the commencement of the late war, and was killed in battle in April 1862 ; and that he never conveyed the legal title to said house and lot. That by his will he devised his whole estate, real and personal, to his wife, Sarah M. McComas, who thereby became invested with the legal title ; and he further.alleges that she had instituted an action of ejectment against him to recover possession of the property. The prayer of his bill is that the “said Sarah M. McComas may be enjoined and inhibited from further proceedings in her"action of ejectment, and that the court may decree a specific execution of the contract” between the appellee and the said ~W. W. McComas; and that the said Sarah McComas should be compelled to execute a deed conveying to him the legal title to said house and lot.
Upon the presentation of this bill to the judge of the Circuit court of Giles, the honorable R. M. Hudson, in vacation, an injunction was awarded, upon condition that the complainant (the appellee here,) should confess judgment in the action of ejectment, and give bond for the payment of costs and damages ; which was accordingly done.
To this bill the appellant, Sarah M. McComas, who was the sole devisee of her husband, ¥m, W. McComas, promptly filed her answer. She denies that the contract as set forth injthe complainant’s bill was the contract between him and her deceased husband, but insists that from frequent conversations with her husband, she be *26 lieved the contract to have been entirely different from se^ f°rth > and proceeds to give iu much detail the conversatioi:i °f her said husband, and the repeated admissions of the complainant to her in reference to the con-f-rac£ . alleging that the complainant and her deceased husband were partners in the practice of medicine, and that her husband, Dr. McComas, proposing to retire from the profession, and probably to leave the State, agreed to sell the house and lot, together with his good-will, medicines and surgical instruments, for a certain price. That the object in making the sale of the house and lot to the appellee, Dr. Easley, was to enable him also to dispose of his good-will, medicines, &c., at the same time; that the sale of the house and lot and of the medicines, goodwill, &c., was one and the same transaction, the one dependent on the other, made at the same time ; that no definite amount was fixed upon as the price of the house and lot; that while she had heard Dr. McComas speak of $1,650 as the value of the house and lot, he said at the same time he would not dispose of them unless he could also get a certain amount for'.his medical practice, medicines, and surgical instruments.
The appellant further answers, that in the spring of 1860 Dr. McComas retired from the practice of medicine, thus dissolving the partnership, and that complainant then took exclusive use of the office, medicines, surgical instruments, &c., and employed them for his own individual use.
Upon the filing of this answer, the complainant amended his bill. He admits the, medical partnership that existed between himself and Dr. McComas. He admits, that at the. time of the purchase of the house and lot he also purchased of Dr. McComas, his medicines, surgical instruments and the good-will of his medical practice, at the price of $450 ; but insists that “ this formed no part of the purchase money of the house and lot, and that no particular time was specified for its *27 payment.” He reiterates the prayer of his original bill for a specific execution of the contract as to the house and lot, insisting that this was an independent transaction, and alleging that the §450 was no longer due, because upon a settlement of the partnership account between him and Dr. McComas, there would be an indebtedness to him more than sufficient to liquidate the said sum of $450.
Hpon these issues of fact made by the bills and answers, numerous depositions were taken, and while the evidence is conflicting to some extent, (though much apparent conflict may easily be reconciled by a careful analysis of the testimony), yet, upon a careful consideration of the whole evidence produced by both parties, taken in connection with the appellee’s own statement of his case in his amended bill, we are of opinion that there is an overwhelming preponderance of the testimony to show that the real contract between the parties was not the contract which the appellee sets forth in his said original and amended bills, and which he has come into a court of equity to enforce. But the contract proved indubitably by the evidence was, that Dr. McComas sold to Dr. Easley his house and lot, together with his medicines, surgical instruments, and the good will of his medical practice, for the lumping consideration of $1,650. Easley himself, in his amended bill, alleges that this was the sum which he agreed to pay, but insists it was a separate transaction, admitting, however, that the purchase of the real and personal property was made at the same time. "We are constrained to say, from the uneontradicted evidence in the cause, that this was not a several contract, but that it was one and indivisible. The object of Dr. McComas was to sell his house and lot to the same person who would buy out his medicines, &c. He proposed to retire from the practice of a profession in which he was well established. The fact that he could sell his personal effects belonging to-his profession, together with the good will of his prac *28 tice, to his former professional partner, was a most material consideration in selling him his house and lot. It 8,1130 a reciprocal inducement to Dr. Easley, when he 'purchased the medicines, instruments and good-will of j/[ecomas’ medical practice, that he should purchase the house and lot, in order to secure the same locality in which Dr. McComas had achieved success and position in the same profession. We are firmly of opinion that the sale and purchase of the real and personal property were made at the same time, under one contract, that the consideration to be paid for the whole was the sum of $1,650. The sum of $1,200 of the purchase money was paid by Easley, and there remains due the sum of $450, with interest from the day of the sale. This balance is a chai’ge upon the land in Easley’s possession. The contract being for the sale of real and personal estate, for a lumping price, the real estate is bound for the whole purchase money. Clarke & al. v. Curtis, 9 Leigh, 559. Certain it is, that Easley is not entitled to a deed conveying to him the legal title, which was in McComas, and with which the appellant has now become invested as his devisee, until every dollar of the purchase money for both real and personal property has been paid. His pretence is, that he owes nothing on account of that balance ; that, upon a settlement of the partnership account between himself and Dr. McComas, there will be due to him an amount more than sufficient to discharge that balance. Such a pretension cannot be allowed in a •court of equity. The partnership was dissolved in 1860. Dr. McComas was killed in battle in 1862. It was his •duty, as surviving partner, to have closed and settled the business of the partnership. Nine years have elapsed, and he has not taken the first step towards such-settlement, and the debts due to the concern must now, in all probability, be barred by time or are hopeless of collection. He has not only made no settlement, but, according to his own admissions,' has destroyed the evi-‘ *29 denceupon which alone a fair and just settlement could possibly be made.
He cannot be permitted now to come into a court of equity and set off against a certain existing demand, admitted to be due, an unliquidated, uncertain claim which may probably arise upon a settlement of a partnership which terminated as early as 1860, which settlement has been now made impossible by lapse of time and his own default. We are, therefore, of opinion that the appellee is not entitled to demand a deed, conveying to him the legal title, until he has first paid the balance due upon the whole purchase, to wit.- the sum of §450 with interest from the day of sale.
The appellee having failed to establish by proof the contract which he sets out, and seeks to enforce, and the evidence in the cause having established a different contract between the parties, the court ought either to have dismissed his bill, or put him to his election either to have the contract as proved, executed, or rescinded. It was clearly error in the court below to decree specific execution of the contract which he sought to enforce. The evidence shows that there was no such contract, but the true contract was entirely different.
The court might have dismissed the bill, for it is well settled that a party coming into a court of equity asking for the specific execution of a contract, must state his contract with reasonable certainty, and prove it as stated; and if there be any materal difference between the allegations and the proofs, the court may dismiss the bill, and leave the parties to their remedies at law. Fry on specific performance, 165; Anthony v. Leftwitch, 3 Rand., 238. But every bill for the specific execution of a contract is an application to the sound discretion of the court. It is not a case requiring the interposition of the court exdebito justitice, but rests in their discretion upon all the circumstances of each particular case. In the language of Lord Eldon, in 13 Vesey’s R. 331: “Theju *30 risdietion is not compulsory upon the court, but the subje°t' discretion ; the question is not what the court must do, but what it may do under the circumstances, either exercising the jurisdiction by granting the specific performariee 011 abstaining from it.” And long previous to him, Lord Hardwicke and other eminent equity judges in England, had, in a great variety of cases, asserted the same discretionary power of the court. In Joynes v. Statham, 3 Atk. R. 388, Lord Hardwicke said, the con stant doctrine of this court is, that it is in their discretion whether under the circumstances of the case before them, they will decree specific performance, or leave the plaintiff to his remedy at law. Later jurists both in England and the United States have reiterated the same doctrine. Chancellor Kent in Seymour v. Delancey, 6 John. Ch. R. 222, upon an extended review of the authorities on the subject, declares it to be a settled principle that a specific performance of a contract of sale rests entirely in the discretion of the court. This court has repeatedly asserted the same doctrine. 3 Rand. 245; 6 Gratt. 78. The Supreme court of the United States in the recent case of Willard v. Tayloe, 8 Wall., U. S. R. 558, have reviewed and approved the decisions above referred to. Of course the discretion to be exercised is not an arbitrary and capricious one, depending upon the mere pleasure of the court, but one which is to be exercised and controlled by the established doctrines and settled principles of equity, governed by the circumstances of each particular case. Willard v. Tayloe, ubi supra; 2 Story Eq. § 742, 751. And indeed it is not in conflict at all with these views to say, that where a contract respecting real property is in its nature and circumstances unobjectionable, it is as much a matter of course for courts of equity to decree a specific performance of it, as it is for a court of law to give damages for the breach of it. 2 Story’s Eq., § 751; 9 Ves. R. 608; 4 Peter’s U. S. R. 311, 328. The court may, un *31 der certain circumstances, refuse its aid and leave the parties to their legal remedies, or it may rescind the contract and place the parties in statu quo. Bowles v. Woodson, 6 Gratt. 78. Or if the plaintiff alleges one contract and the defendant proves another, the court may compel the specific execution of the contract as proved. 1 Dan’l Ch. Pract., Perkins’ edition 451, and note; Fife v. Clayton, 13 Ves. R., 546.
"Where the contract between the parties is different from the contract set up in the bill, and the true contract is proved by the defendant, the court ought generally not to dismiss the bill, hut decree specific performance of the contract as proved, where it will produce neither hardship nor inj ustice to the parties : Fry on Specific Performance, 302 and note; Bradford v. Union Bank of Tennessee, 13 How. U. S. R. 57; and it seems this too against the claim of the plaintiff to have his bill dismissed. Fry (ubi supra) and note; Bradbury v. White, 4 Greenl. R. 391; 5 Paige’s R. 164; Arnold v. Arnold, 2 Dev. Ch. R. 467.
It is the advantage of a court of equity, as observed by Lord Eedesdale in Davis v. Hone, 2 Sch. & Lef. R. 341; which case is quoted approvingly by Mr. Justice Field in delivering the opinion of the Supreme court in Willard v. Tayloe: “it is the advantage of a court of equity that it can modify the demands of parties according to justice, and it may refuse its decree unless the party will take a decree upon condition of doing or relinquishing certain things to the other party.”
In the case before us, we think, it would be most equitable not to dismiss the plaintiff’s bill, and remit the parties to their legal rights. Where equity can do complete justice between the parties, it will never turn them out of court to pursue their remedy at law. 1 Munf. 63; 5 Pet. U. S. R. 263. But a court of equity having complete jurisdiction of the parties, and the subject matter, should make such decree as will settle the rights of *32 the pardea, do complete justice between them, and close-*he controversy forever. "We are therefore of opinion, ^ th® Plaintiff cannot have specific execution of the contract he seeks to enforce, yet, under the circumsj.ances 0f this cas6) pe 0Ught to have his election (see Hook v. Ross, 1 Hen. & Mun. 310), either to have the contract rescinded, or to have it performed in accordance with the agreement, as proved ; that is to say, he shall he entitled to demand and receive from the devisee of' Dr. McComas, a deed conveying such title as Dr. McComas had in the house and lot in controversy, upon condition that he at the same time shall pay over to the personal representative of Dr. McComas the sum of four hundred and fifty dollars, with interest from the 14th day of April 1860. But if he shall so elect, then the-contract shall be rescinded, and he shall deliver up the-house and lot to Mrs. McComas, and shall be entitled to receive back from the estate of Dr. McComas the-sum of $1,200, with interest from the 14th day of April 1860, which amount, however, shall be subject to a credit of $450, as .of the same day, and be credited also by the rents and profits from the time he took possession of the said house and lot, less the value of improvements made by him, and also by whatever amounts he-has received for the small portion of the lot which he has sold.
There are other questions presented in the record, which we do not deem it necessary to notice, as in the view we have taken of the case, they become of no importance.
We are of opinion that the decree of the Circuit court of Giles must be reversed, and the cause remanded to-that court to be further proceeded in, in accordance with the principles announced herein.
The decree is as follows :
The court is of opinion, for reasons stated in writing, *33 and filed in the record, that the contract set forth in the original and amended bills of the appellee, was not established by the proofs in the cause. But the court is of opinion that the true contract and agreement of the parties was, that the appellant’s testator, "W. W. McComas, sold to the appellee (Easley) his house and lot, together with his medicines, surgical instruments, and good-will of his medical practice, for the lumping price of $1,650.
And the court is further of opinion that the balance of that sum ($1,200 having been paid), to wit: the sum of $450, with interest from the 14th day of April 1860, is still due, and is a charge upon the said house and lot, and that the said appellee (Easley) is not entitled to demand and receive from the devisee of ‘W. W. McComas a deed conveying to him the legal title, until he shall have first paid to his personal representative the said sum of $450, with interest from the 14th day of April 1860.
But the court is further of opinion that the said appellee should be put to his election, either to perform the contract, as hereinbefore set out, or have the same rescinded ; and, if he should refuse to perform the same, or elect to have the same rescinded within a reasonable time, then the house and lot shall be delivered up to the appellant; and an account shall be taken, in which the appellee shall be credited with the sum of $1,200, with interest from the 14th day of April 1860, together with the value of any permanent improvements he may have put on the premises ; and he is to be charged with the sum of $450, with interest from 14th April 1860, and also the rents and profits from the date of his possession, together with any amounts he may have received for any portion of the said lot which he has sold since he came into the possession of the same, the appellant to convey the title to the purchaser; and the balance due, if any, shall be a claim against the estate of the said ¥m, W. McComas.
*34 It is therefore decreed and ordered, that the said decree the said Circuit court be Reversed and annulled, an(t that the appellant recover against the appellee her costs in the said Circuit court, together with her costs expended in the prosecution of her appeal here. And the cause is remanded to the said Circuit court, to be further proceeded in, in accordance with the foregoing opinion.
Decree reversed.